IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 04-cv-1456-EWN-CBS

STEVE MURRAY,

      Plaintiff,

v.

CARS COLLISION CENTER OF COLORADO, LLC, an Illinois limited liability company,

      Defendant.

---

## MEMORANDUM ORDER and RECOMMENDATION
## REGARDING PLAINTIFF'S MOTION FOR SANCTIONS
## FOR SPOLIATION OF EVIDENCE

---

Magistrate Judge Craig B. Shaffer

      THIS MATTER comes before the court on Plaintiff Murray's Motion for Sanctions for

Spoliation of Evidence (Document # 38), filed on April 8, 2005. The instant motion contends

that Defendant Cars Collision Center ("CCC") intentionally destroyed crucial evidence relevant

to the claims and defenses in this action. Murray argues that contemporaneous time cards

showing his actual attendance history are critical in view of Defendant's contention that Plaintiff

was terminated, in part, because of repeated tardiness, missed work and his practice of leaving

work early. Plaintiff Murray's pending motion seeks various sanctions, including an adverse

inference against CCC, an order excluding any defense evidence offered at trial to established

1

Plaintiff's alleged tardiness or unexcused absences, and an award of fees and costs.  Defendant

Cars Collision Center filed a Response on April 27, 2005, in which it insists that Mr. Murray's

time cards were not lost as a result of bad faith or willful conduct, but rather were unintentionally

discarded with the passage of time.  Defendant further argues that sanctions are unwarranted in

view of the fact that Plaintiff concedes a history of tardiness.

This court held a hearing on the pending motion on June 17, 2005.  At the conclusion of

that hearing, I requested additional briefing from the parties on the implications of the Tenth

Circuit's decision in *Hicks v. Gates Rubber Co.*, 833 F.2d 1406 (10th Cir. 1987).  The court

received Defendant's Supplemental Response on July 1, 2005, and Plaintiff's Reply to

Supplemental Response on July 7, 2005.  The court has carefully considered the arguments

presented in the parties' briefs and by counsel during the hearing on June 17, 2005, as well as the

entire court file and the applicable case law.

## FACTUAL BACKGROUND

Murray initiated the instant action on July 15, 2004 with a Complaint that alleges racial

discrimination, retaliation and breach of implied contract or promissory estoppel.  Plaintiff

contends that he was subjected to repeated racial harassment, was demoted from his position as

an auto body technician and assigned menial tasks, was subjected to unfounded complaints about

his work performance, and then terminated after he complained to management about the racially

hostile work environment.  In its Answer, Defendant Cars Collision Center maintains that any

2

racial harassment directed toward Plaintiff was perpetrated by a peer and not by management-level employees. Moreover, Defendant insists that all complaints regarding Murray's work performance and attendance were well-founded. In support of the latter argument, CCC relies upon an "Attendance Controller" form prepared by Mr. Murray's former general manager, Tim Sewolt, which purports to record the days Plaintiff was allegedly tardy or absent. *See* Exhibit C attached to Plaintiff's Motion for Sanctions.

In deciding the instant motion, it may be helpful to place the salient events in chronological order. It is undisputed that Mr. Murray was terminated by Cars Collision Center on April 14, 2003. *See* Complaint at ¶ 19. A Termination Packet Request prepared by Tim Sewolt cited as reasons for termination Murray's "quality of work, attendance." *See* Exhibit A attached to Plaintiff's Motion for Sanctions. Approximately two weeks after his termination, Mr. Murray spoke by telephone with Amy Mieding, the human resources manager for CCC . According to Mr. Murray's version of that conversation, he told Ms. Mieding that he had been harassed by a co-worker and that he had asked his manager, Mr. Sewolt, to "make the harassment stop." After listening to Mr. Murray's allegation of discrimination, Ms. Mieding asked what he wanted the company to do. Plaintiff claims that he told Ms. Mieding to contact his attorney if she had any questions. *See* Exhibit J attached to Plaintiff's Motion for Sanctions. During her deposition, Ms. Mieding acknowledged the telephone conversation with Mr. Murray. Ms. Mieding recalled that Mr. Murray complained of harassment and discrimination, but did not

remember Plaintiff stating that he had brought his complaints to Mr. Sewolt's attention. *See* Exhibit K, at 32, attached to Plaintiff's Motion for Sanctions. Ms. Mieding also did not recall Mr. Murray ever mentioning that he had an attorney. While Plaintiff did not specifically raise the specter of litigation, Ms. Mieding recognized that Mr. Murray might purse a claim against the company. *Id.* at 34. Ms. Mieding claims that she spoke with Mr. Sewolt within a matter of days after her conversation with Plaintiff. *Id.* at 32-33.

During his deposition, Mr. Sewolt described how he monitored and recorded his employees' time. According to Sewolt, all employees at the Pueblo Cars location punched time clock cards showing when they started and ended work each day, and the time that they were off for lunch. *See* Exhibit I, at 79-81, attached to Plaintiff's Motion for Sanctions. Mr. Sewolt has conceded that these time cards would be the best record of when an employee arrived at and left work. *Id.* at 80. Mr. Sewolt kept employee time cards in his desk or in boxes which were stored in a closet. *Id.* Each week Mr. Sewolt prepared a time sheet for each employee which was sent electronically to corporate headquarters. During his deposition, Mr. Sewolt provided inconsistent descriptions of these time sheets. At one point, Mr. Sewolt testified that the time sheets "should show what time the employee reported to work and what time they left." *Id.* at 84. Later in the same deposition, Mr. Sewolt stated that the time sheets would only record total hours worked, and not an employee's daily arrival and departure times. *Id.* at 247. As to the "Attendance Controller" prepared for Mr. Murray, Sewolt testified that his practice was to

prepare an "Attendance Controller" form for each employee during their 60-day probationary period to track tardiness and unexcused absences. *Id.* at 117-118. According to Mr. Sewolt, with the exception of perhaps one other employee, Mr. Murray's Attendance Controller was the only form he continued to up-date after completion of the probationary period. *Id.* at 118-119. Sewolt claims that he would rely on time cards and time sheets in preparing an Attendance Controller, but would not necessarily transcribe information on a daily basis. *Id.* at 120.

Mr. Sewolt ended his employment with Cars Collision Center on June 13, 2003. According to Mr. Sewolt, when he left the company all time cards for the Pueblo CCC location were located in his desk. *Id.* at 246. Ron Minton became manager of the Pueblo center upon Mr. Sewolt's departure and remained in that position through approximately January 2004, when he was succeeded by Drew Nicholas. Minton and Nichols maintain that they did not destroy Mr. Murray's time cards. *See* Exhibits 2 and 5 attached to Defendant's Response.

Plaintiff filed a claim with the Colorado Civil Rights Division on July 3, 2003. Cars Collision Center submitted a position statement to the Colorado Civil Rights Division on September 10, 2003. In a response sent to the Civil Rights Division on or about October 23, 2003, Mr. Murray's previous counsel conceded that "Steve Murray was frequently late for work" and referred to "Mr. Murray's somewhat regretful on-time history." *See* Exhibit 6 attached to Defendant's Response. When questioned during his deposition about specific entries on the "Attendance Controller" prepared by Sewolt, Mr. Murray could not recall whether he

was tardy on four different occasions in October 2002, but insisted that usually he would let Mr.

Sewolt know in advance whenever he was going to arrive late to work.  *See* Exhibit 7, at 53-54,

attached to Defendant's Response.

Plaintiff's First Set of Discovery Requests sought, *inter alia*, "all documentation related

to CCC's investigation of Plaintiff's complaints," "all documents supporting Mr. Murray's

alleged performance or attendance problems and/or the decision to terminate Mr. Murray," and

"time records, schedules, punch cards or other documents pertaining to the work schedules and

attendance of all other employees at the Pueblo Cars location from 2000 through the present."

*See* Exhibit D attached to Plaintiff's Motion for Sanctions.  On October 28, 2004, Defendant

responded to Plaintiff's First Set of Discovery Requests.  Defendant summarily dismissed the

request for time and attendance records for other employees by objecting that the "request for

production is overly broad and burdensome and unlikely to lead to the discovery of admissible

evidence." *See* Exhibit E attached to Plaintiff's Motion for Sanctions.   As to the request for all

documents supporting Plaintiff's alleged performance or attendance problems, CCC stated that

"[a]ll documentation with regard to this request in Car's possession . . . has previously been

produced."  Apparently, that documentation did not include time cards for Mr. Murray or any

other employee.

Plaintiff continued to press for his time and attendance records and the time cards of other

CCC employees.  In a letter dated October 29, 2004, Defendant counsel reiterated his client's

6

objections and also insisted that "CCC . . . has been unable to find any responsive documents."

Counsel assured Mr. Murray's attorney that CCC would continue to search and would

supplement its disclosures if responsive documents were discovered.  *See* Exhibit F attached to

Plaintiff's Motion for Sanctions.

On November 23, 2004, Plaintiff's counsel again requested production of time cards and

attendance records for CCC employees.  *See* Exhibit G attached to Plaintiff's Motion for

Sanctions.  On December 13, 2004, defense counsel advised Plaintiff that

> time cards do not exist anymore for the period of time Mr. Murray was
> employed.  Which manager or employee disposed of them and when is unknown.
> I can also tell you, however, that the disposal of the time punch cards had nothing
> to do with the suit.  Any time sheets and computer time sheets prepared by Mr.
> Sewolt for the time period that Mr. Murray was employed were consolidated into
> the records I've produced to you . . . .  The records I produced to you contain the
> identical information.

*See* Exhibit H attached to Plaintiff's Motion for Sanctions.  Plaintiff disagrees, noting, for

example, that the computer records do not indicate whether or to what extent an employee was

tardy.

Plaintiff filed the instant Motion for Sanctions on April 8, 2005.  Attached to

Defendant's Response, filed on April 27, 2005, was a Declaration from Nathan Reis, the current

parts manager at the Pueblo Car Collision Center.  Mr. Reis states that "in the fall of 2004," he

conducted a search for employee time records for the years 2002 and 2003.  That search in 2004

was unsuccessful.  According to Mr. Reis, during the "week of April 11, 2005, at the suggestion

of Cars Collision's insurance estimator who overheard that time cards were missing, [Reis]

looked in the desk in the estimating office used by the insurance adjusters and discovered time

cards from 2002 and 2003." *See* Exhibit 1 attached to Defendant's Response.[1]  Mr. Murray's

time cards were not found among that collection of time cards.

## ANALYSIS

Discovery procedures set forth in the Federal Rules of Civil Procedure seek to further the

interests of justice by minimizing surprise at trial and ensuring wide-ranging discovery of

information.  *United States ex rel. Schwartz v. TRW, Inc.*, 2002 WL 31688812 (C.D. Cal. 2002).

To that end, Rule 26(b) permits discovery "regarding any matter . . . that is relevant to the claim

or defense of any party" or discovery of any information that "appears reasonably calculated to

lead to the discovery of admissible evidence."  *See* Fed.R.Civ.P. 26(b)(1).  *See also Williams v.

Board of County Commissioners*, 192 F.R.D. 698, 702 (D. Kan. 2000) (a request for discovery

should be considered relevant if there is any possibility the information sought may be relevant

to a claim or defense).

To ensure that the expansive discovery permitted by Rule 26(b)(1) does not become a

futile exercise, putative litigants have a duty to preserve documents that may be relevant to

potential future litigation.  *See Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 216 (S.D.N.Y.

2003) ("the obligation to preserve evidence arises when the party has notice that the evidence is

relevant to litigation or when a party should have known that the evidence may be relevant to

8

future litigation"). "Spoliation" has been defined as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *See, e.g., West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). *See also United States v. Koch Industries, Inc.*, 197 F.R.D. 463, 482 (N.D. Okl. 1998) (acknowledging a litigant's duty "to preserve evidence that it knows or should know is relevant to imminent or ongoing litigation").

The court has inherent power to impose sanctions for the destruction or loss of evidence. *See, e.g., Millsap v. McDonnell Douglas Corp.*, 162 F. Supp.2d 1262, 1309 (N.D. Okla. 2001). *See also Procter & Gamble Co. v. Haugen*, 179 F.R.D. 622, 631 (D. Utah 1998) (recognizing a court's inherent power and authority under Fed.R.Civ.P. 37(b)(2) to sanction a litigant "who is on notice that documents and information in its possession are relevant to litigation, or potential litigation, or are reasonably calculated to lead to the discovery of admissible evidence, and destroys such documents and information"), *judgment aff'd in part and rev'd in part on other grounds*, 222 F.3d 1262 (10th Cir. 2000); *Capellupo v. FMC Corp.*, 126 F.R.D. 545, 551 (D. Minn. 1989) (holding that sanctions are appropriately levied when a party is on notice that documents in its possession are relevant to pending or potential litigation, but still abrogates its duty of preservation).

In filing the instant motion, Plaintiff argues strenuously that Defendant should be sanctioned, having

f

destroyed discoverable evidence which it knew or should have known was relevant to pending or reasonably foreseeable litigation. . . . [Defendant] had notice of a potential claim involving Murray's termination before it destroyed the time records.  CCC also knew that Sewolt claimed that one reason for Murray's termination was his poor attendance and tardiness.  At the time the records were destroyed, CCC knew or should have known that the time records would be key evidence related to the termination.  Thus, CCC acted willfully and in reckless disregard of its duty to preserve these documents.

*See* Plaintiff's Motion for Sanctions, at 6-7.  As appropriate sanctions, Murray argues that in ruling on Defendant's pending motion for summary judgment, the court should assume an adverse inference that the missing time records would not support CCC's claim of tardiness on the part of Mr. Murray.  Plaintiff also requests an order excluding from trial all testimony and evidence offered by Defendant to establish Mr. Murray alleged tardiness and unexcused absences and an instruction that the jury should assume that evidence contained in any missing time records would not support Defendant's stated grounds for terminating Plaintiff.  Finally, Plaintiff requests an award of fees and costs related to the instant motion.

A.      *The Relevance of the Missing Records*

In moving for summary judgment, Defendant contends that "[i]n addition to the decline in his work performance, the Plaintiff also was routinely tardy for work and had several unexcused absences."  Defendant cites excerpts from Mr. Sewolt's deposition as support for this assertion. *See* Memorandum of Law in Support of Defendant's Motion for Partial Summary Judgment, at 6.  Defendant also maintains that Mr. Murray abused his work schedule by leaving work early "claiming to have worked through his lunch break when Tim Sewolt knew that the Plaintiff had

indeed taken a lunch break." *Id.* Notwithstanding the facts and arguments advanced in its motion

for summary judgment, Defendant maintains that Plaintiff has not been prejudiced by the

apparent disappearance of his time cards because Mr. Sewolt's stated practice was to transfer all

information from employee time cards to computer printouts which have been produced in

discovery.[2]

Plaintiff argues that a comparison of his time cards and the time cards of similarly situated

white employees would show that Murray was disciplined more severely than white employees

with similar attendance records and would help rebut CCC's contention that he was terminated

for legitimate reasons, including poor work attendance. Murray further insists that his missing

time cards would support his contention that Sewolt falsified the "Attendance Controller" to

make it appear that Plaintiff was tardy or absent more than he actually was, and that Sewolt lied

when he claimed Murray regularly left work early. *See* Plaintiff's Motion for Sanctions, at 2-3.

In that respect, Plaintiff insists that information on the "Attendance Controller" is contradicted

by other payroll records for Mr. Murray. As support that for that proposition, Plaintiff notes

that the Sewolt "Attendance Controller" marks him as tardy on December 13, 2002 and January

8 and 10, 2003, while payroll records show that he worked 44 hours and 43.3. hours during those

respective weeks. *See* Plaintiff's Response to Defendant's Motion for Partial Summary

Judgment, at 16. *See also Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99,

109 (2d Cir. 2002) (holding that a party seeking an adverse inference "must adduce sufficient

evidence from which a reasonable tier of fact could infer that 'the destroyed [or unavailable]

evidence would have been of the nature alleged by the party affected by its destruction'").

It simply defies logic to suggest that Mr. Murray's time cards are not relevant to the

claims, and more particularly the defenses, asserted in this action.  While it appears that CCC has

produced computerized records which document employee hours, Defendant must concede that

those records are not complete substitutes for Mr. Murray's missing time cards.  Plaintiff notes

that the computer print-outs produced by CCC merely show the total hours worked by a

particular employee during a given week, and do not show specific times when that employee

arrived at or left work, or when that employee punched out for lunch.  The limited utility of the

computerized records may explain why Mr. Sewolt had a long-standing practice of retaining time

cards and time sheets, and why he testified that "time cards would be the best record of when

someone actually arrived at work and left.  *See* Exhibit I, at 76 and 80, attached to Plaintiff's

Motion for Sanctions.  *Cf. Hudson v. Citizens Gas & Coke Utility*, 2002 WL 32067276, *7-8

(S.D. Ind. 2002) (in an employment discrimination case, held that plaintiff had presented

sufficient evidence to establish his *prima facie* case where attendance records indicated that a

similarly situated person not in the protected class had an identical record of absenteeism); *Hott

v. VDO Yazaki Corp.*, 922 F. Supp. 1114, 1125 n. 14 (W.D. Va. 1996) (where plaintiff argued

that her attendance record was "similar" to other employees who were not terminated, court

found genuine issues of material fact which precluded summary judgment on plaintiff's claim of

sexual harassment and noted that business attendance records should be admissible).

B.      *Duty to Preserve Evidence*

Weighing all of the information contained in the parties' briefs and attached exhibits, I conclude that certainly by July 3, 2003, when Mr. Murray filed his claim with the Colorado Civil Rights Division, Defendant had a duty to preserve evidence relevant to the claims and defenses asserted by the parties. It is undisputed that prior to that date, Mr. Murray had brought claims of harassment and discrimination to the attention of CCC's human resources manager. During the same conversation, Mr. Murray demanded some amount of money relating to his prior employment. Apparently, Ms. Mieding felt Mr. Murray's statements had sufficient import to warrant a follow-up call to the general manager of the Pueblo Cars Collision Center. By July 3, 2003, it was reasonably foreseeable that litigation would arise from Mr. Murray's termination and that company records might be relevant to those proceedings.

Alternatively, CCC had a obligation to comply with federal and state regulations which require the preservation of employment records. Plaintiff points to rules promulgated by the Colorado Civil Rights Division which require an employer to preserve and retain records relevant to a charge or complaint while that charge or complaint is being processed. *See* Exhibit L attached to Plaintiff's Motion for Sanctions. The applicable rule defines relevant records to include "personnel or employment records relating to the charged party or complainant and to all employees holding similar positions to the one the charging party or complainant held or sought."

13

Federal regulations impose a comparable records preservation requirement. *See* 29 C.F.R. §

1602.14 (providing that where a charge of discrimination is filed, the respondent employer

"shall" preserve all personnel records relevant to the charge or action until final disposition of the

charge or action, which is defined as the date "on which such litigation is terminated"). *See also*

*Byrnie v. Town of Cromwell, Board of Education*, 243 F.3d 93, 109 (2d Cir. 2001) (recognizing

that "a regulation can create the requisite obligation to obtain records, even if litigation involving

the record is not reasonably foreseeable). Defendant apparently does not dispute that it was

required to comply with applicable record preservation requirements.

*C.     Intent*

      Common sense suggests that a failure to produce or preserve relevant evidence may

involve conduct that falls "along a continuum of fault – ranging from innocence through the

degrees of negligence to intentionality." *Residential Funding Corp. v. DeGeorge Financial Corp.*,

306 F.3d at 108. *See also Anderson v. Cryovoc, Inc.*, 862 F.2d 910, 925 (1ˢᵗ Cir. 1988)

("[n]ondisclosure comes in different shapes and sizes; it may be accidental or inadvertent, or

considerably more blameworthy").

      In *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10ᵗʰ Cir. 1997), the Tenth Circuit held

that "the bad faith destruction of a document relevant to proof of an issue at trial gives rise to an

inference that production of the document would have been unfavorable to the party responsible

for its destruction." In the same decision, the Tenth Circuit further reasoned that no adverse

inference should arise where the destruction of a document resulted from mere negligence, because only bad faith would support an "inference of consciousness of a weak case."[3]  *Id.*  Relying heavily on the decision in *Aramburu,* Defendant argues that an adverse inference, or any other sanction, cannot be imposed in this case because Mr. Murray's time cards were not destroyed through willful conduct or bad faith.

Yet, in a decision pre-dating *Aramburu,* the Tenth Circuit held that a plaintiff was entitled to the benefit of a rebuttable presumption that destroyed records would have bolstered her case where the defendant violated federal regulations requiring the preservation of records.  *See Hicks v. Gates Rubber Co.*, 830 F.2d 1406, 1419 (10th Cir. 1987) (noting that the defendant employer was required to comply with 29 C.F.R. § 1602.14).  More importantly, for purposes of the instant case, the Tenth Circuit in *Hicks* concluded that a rebuttable presumption was appropriate even while observing that "the record does not support the assertion that Gates acted in bad faith in destroying the documents." *Id.* at 1419, n. 5.  *See also Lombard v. MCI Telecommunications Corp.*, 13 F. Supp.2d 621, 628-29 (N.D. Ohio 1998) (holding that plaintiff would be entitled to the benefit of a rebuttable presumption that missing documents would have bolstered her case if plaintiff could prove that defendant failed to follow federal regulations requiring document preservation); *Harris v. Niagara Mohawk Power Corp.*, 1998 WL 865566, *9 (N.D.N.Y. 1998) (in case alleging race discrimination, held that plaintiff's ability to prove his case had been impaired by defendant's failure to comply with records retention regulations; for purposes of a

pending motion for summary judgment, plaintiff was entitled to an inference that missing records would contain evidence favorable to his case).  *But see Byrnie v. Town of Cromwell, Board of Education*, 243 F.3d at 109 ("although a regulation may supply the duty to preserve records, a party seeking to benefit from an inference of spoliation . . . must demonstrate first that the records were destroyed with a culpable state of mind").

I concede the apparent conflict between the holdings in *Aramburu* and *Hicks*.  Both cases involved allegations of employment discrimination under Title VII.  In *Aramburu*, the plaintiff had been terminated for poor attendance, but maintained that he had been improperly denied permission to use vacation or sick leave and that his supervisor had incorrectly tabulated his unexcused absences.  It was undisputed that portions of Mr. Aramburu's attendance records were missing.  However, there is no indication that the plaintiff in *Aramburu* cited applicable record preservation requirements or raised the issue of regulatory compliance.

In *Hicks*, the plaintiff was terminated for allegedly unsatisfactory job performance.  Ms. Hicks had been employed as a security guard and was required to patrol the defendant's plant facility and associated grounds.  The defendant in *Hicks* required security guards to maintain daily logs and record their patrol times on a clock which they carried.  The defendant in *Hicks* conceded that many of the clock charts and daily reports generated by the plaintiff and other security guards had been destroyed.  The plaintiff's supervisor also testified that clock charts and daily reports were routinely used for determining whether disciplinary action should be taken

against an employee, and that he in fact relied upon those documents in ultimately terminating

Ms. Hicks.  Unlike *Aramburu*, however, it does not appear that the plaintiff in *Hicks* specifically

invoked the doctrine of spoliation.

After carefully reviewing *Aramburu* and *Hicks*, I find no factual grounds upon which to

distinguish the two holdings.  I also find nothing to suggest that the Tenth Circuit in *Aramburu*

intended to overturn its earlier decision.  To the contrary, the opinion in *Aramburu* notes the

absence of "precedent from this circuit on the evidentiary doctrine of spoliation."

Notwithstanding that observation, I conclude that *Hicks* provides the better approach in cases

where record retention is mandated by regulation.  In the latter cases, it is not unreasonable to

place the burden of persuasion on the regulated party.  Presumably, that party is on notice of its

regulatory obligations and can implement policies and procedures to ensure compliance.  *See*

*Mitchell v. Utah State Tax Commission*, 26 F. Supp.2d 1321, 1326 (D. Utah 1998) (noting that

the record preservation requirements memorialized in 29 C.F.R. § 1602 are designed to protect

and benefit employees).  The *Hicks* decision appropriately places the risk of non-compliance on

the regulated party and thereby provides further incentive to adhere to administrative

requirements.  In contrast, *Aramburu* would require the employee to prove bad faith or willful

conduct in order to justify an adverse inference instruction.  As in *Aramburu*, the employer can

avoid that sanction simply by arguing that relevant documents were lost through inadvertence or

negligence, thereby creating an unintended disincentive for regulatory compliance.  Consistent

17

with the analysis in *Hicks*, I will place the burden in this case on Cars Collision Centers. *Cf.*

*Anderson v. Cryovac, Inc.*, 862 F.2d at 925 (holding that in cases involving spoliation, any

difficulties created by the absence of evidence should fall squarely upon the guilty party).

D.      *Appropriate Sanctions*

As noted, Plaintiff has asked the District Court to draw an adverse inference that the

missing time records would not support CCC's asserted reasons for terminating Murray and

argues that such an inference is sufficient evidence of pretext to deny Defendant's pending

motion for summary judgment.  As an additional sanction, Plaintiff requests an order excluding

from trial all testimony and other evidence offered to establish Mr. Murray alleged tardiness and

unexcused absences, including the Sewolt "attendance controller," and an instruction that the jury

should assume that evidence contained in any missing time records would not support

Defendant's stated grounds for terminating Plaintiff.  Finally, Plaintiff requests an award of fees

and costs related to the instant motion.  As several of these requested sanctions contemplate

action by the District Court that might be determinative of a dispositive motion or trial, it seems

appropriate to address these evidentiary sanctions in the form of a Recommendation, rather than

an Order.[4]

Plaintiff has not cited this court to any reported judicial decisions holding that an

employer's failure to comply with document preservation requirements constitutes sufficient evidence of pretext to defeat a motion for summary judgment in a Title VII action.[5]  However, in *Harris v. Niagara Mohawk Power Corp.*, 1998 WL 865566, *9 (N.D.N.Y. 1998), the trial court held that for purposes of a pending motion for summary judgment, the plaintiff was entitled an adverse inference that missing employment records would have contained evidence favorable to the plaintiff's discrimination claims.  After taking into consideration the plaintiff's affidavits and "the inferences to be drawn from the missing personnel records," the court in *Harris* found "there are issues of material fact regarding the legitimacy of the non-discriminatory reasons articulated by defendants concerning Plaintiff's claim of retaliatory transfer." *Id.* at *15.

Defendant CCC's pending motion for summary judgment is governed by the familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  If Murray presents a *prima facie* case of discrimination, the burden then shifts to CCC to come forward with a legitimate, nondiscriminatory justification for taking the challenged employment action.  If Defendant satisfies this standard, the burden shifts back to Plaintiff to provide evidence showing that CCC's proffered reasons are a pretext of discrimination. *Cf. Randle v. City of Aurora*, 60 F.3d 441, 451 (10th Cir. 1995).  Murray requests an adverse inference that would impose yet another layer of burden-shifting on the summary judgment analysis.

The Tenth Circuit in *Hicks* held that the plaintiff was entitled to a *rebuttable*

presumption that destroyed documents would have bolstered her claim of sexual harassment.

The *Hicks* decision clearly acknowledges the possibility that a defendant-employer could present

sufficient evidence to overcome an adverse presumption as to the contents of missing documents.

*See Hicks v. Gates Rubber Co.*, 833 F.2d at 1419 (citing *Capaci v. Katz & Bestoff, Inc.*, 771 F.2d

647, 661 n. 7 (5th Cir. 1983)).  *Cf. Latimore v. Citibank Federal Savings Bank*, 151 F.3d 712, 716

(7th Cir. 1998) (holding that while the violation of a record retention regulation creates a

presumption that the missing record contained evidence adverse to the violator, the presumption

did not attach where defendant's explanation of inadvertent non-compliance was

uncontroverted); *Favors v. Fisher*, 13 F.3d 1235, 1239 (8th Cir. 1994) (while plaintiff was

entitled to a presumption that destroyed documents would have bolstered her case, based upon

defendant's failure to comply with federal regulations, that presumption had been rebutted by

testimony creating an inference that documents were destroyed pursuant to normal practice and

not in anticipation of litigation).  Unless Defendant has an opportunity to present evidence of an

arguably innocent explanation for its failure to preserve records, the permissible inference

afforded by *Hicks* becomes an irrebuttable presumption.  *Cf. Stevenson v. Union Pacific Railroad

Co.*, 354 F.3d 739, 750 (8th Cir. 2004) (in a case where an adverse inference was imposed as a

spoliation sanction, held the trial court abused its discretion by not permitting defendant to offer

a reasonable rebuttal to the inference).

For purposes of a motion under Fed.R.Civ.P. 56, the court must construe the factual

record and reasonable inferences therefrom in the light most favorable to the non-moving party.

*Kidd v. Taos Ski Valley, Inc.*, 88 F.3d 848, 851 (10th Cir. 1996).  However, where the same

undisputed facts could give rise to contradictory ultimate inferences, summary judgment is not

appropriate.  *Luckett v. Bethlehem Steel Corp.*, 618 F.2d 1373, 1382 (10th Cir. 1980).  It is

undisputed that all CCC employees at the Pueblo location, including Mr. Murray, were required

to punch a time clock.  Mr. Sewolt has testified, without contradiction, that his usual practice

was to utilize employee time cards to prepare time sheets and that data from those time cards

was entered into a computerized system.  It is also undisputed that Defendant has located and

produced all time cards from the relevant time period, except for the Plaintiff's time cards.  Not

surprisingly, the parties draw very different inferences from these undisputed facts.  Mr.

Murray denies that his attendance or tardiness was materially different from his co-workers and

insists that his time cards would substantiate that assertion.  Plaintiff naturally presumes that

Defendant destroyed his time cards to eliminate unfavorable evidence.  In support of that

hypothesis, Mr. Murray points to alleged inaccuracies in the Sewolt "Attendance Controller."

Conversely, Defendant denies any willful intent to destroy evidence and provides various

affidavits from former managers who deny destroying Mr. Murray's time cards.  Defendant's

argument presumes that Plaintiff's time cards were inadvertently misplaced as the Pueblo CCC

location changed managers over time.  *Cf. Doe v. Marsh*, 918 F. Supp. 580, 583 (N.D.N.Y. 1996)

(any assessments of credibility and all choices between available inferences are matters that

should be left to the trier of fact); *Kubes v. American Medical Sec., Inc.*, 895 F. Supp. 212, 215

(S.D. Ill. 1995) (holding that summary judgment is inappropriate where the parties disagree about

inferences that could reasonably be drawn from undisputed facts).  At best, the parties present a

genuine issue of fact as to the circumstances and possible motivation surrounding the

disappearance of Mr. Murray's time cards.  *Cf. Smith v. Borg-Warner Automotive Diversified*

*Transmission Products Corp.*, 2000 WL 1006619, *9 (S.D. Ind. 2000) (denying defendant's

motion for summary judgment, but holding that plaintiff was entitled to an adverse inference

instruction at trial).  *Compare Latimore v. Citibank Federal Savings Bank*, 151 F.3d at 716

(granting defendant's motion for summary judgment even where defendant had failed to comply

with an applicable record retention regulation; held that defendant's uncontroverted explanation

of inadvertent destruction defeated the adverse presumption in favor of plaintiff).

　　In the event that Plaintiff's claims survive summary judgment, *Hicks* would afford

Murray the benefit of a rebuttable presumption based upon Defendant's failure to comply with

its document preservation obligations.  In his motion for sanctions, Plaintiff suggests that the

jury should be instructed that evidence contained in any missing time records would not support

CCC's stated grounds for terminating Mr. Murray.  Plaintiff's proposed instruction sweeps too

broadly in light of applicable case law.  The Tenth Circuit in *Hicks* held that the employee was

entitled to the benefit of a *rebuttable* presumption that destroyed documents would have

bolstered her claim of sexual harassment.  Similarly, in this case, I recommend that the jury be

instructed that they "may, but are not required to, assume that Plaintiff's missing time cards would support his claim that his tardiness or unexcused absences were no more frequent than other Cars Collision Center employees who were not members of a protected class." The jury should also be instructed that they are free to reject the presumption if they find that the time cards were destroyed accidentally or for an innocent purpose. *Compare Mosaid Technologies Inc. v. Samsung Electronics Co. Ltd.*, 348 F. Supp.2d 332, 334 (D. N.J. 2004) (providing a proposed adverse inference jury instruction). At trial, the drawing of reasonable inferences from evidence is for the trier of fact, not the court. *Smith v. Borg-Warner Automotive Diversified Transmission Products Corp.*, 2000 WL 1006619, *8. Accordingly, I recommend that the District Court further sanction Defendant's failure to comply with record retention regulations by giving a "rebuttable presumption" instruction to the jury at the time of trial.

I recommend, however, that the District Court deny Plaintiff's additional request for an order excluding from trial all testimony and other evidence offered to establish Mr. Murray alleged tardiness and unexcused absences, including the Sewolt "Attendance Controller." During the June 17th hearing, Plaintiff narrowed the scope of his suggested order, stating that he now intended to utilize the "Attendance Controller" in challenging Mr. Sewolt's credibility. However, even as modified, Plaintiff's effort to exclude evidence of Mr. Murray's tardiness and unexcused absences sweeps too broadly. Plaintiff's requested sanction would preclude Defendant from introducing statements by Mr. Murray's former counsel which seemingly concede Plaintiff's

23

tardiness and "somewhat regretful on-time history," as well as Plaintiff's own deposition testimony. In cases involving spoliation, sanctions are intended to "level the evidentiary playing field" and penalize the offending party. *See Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). While sanctions should have a remedial purpose of restoring the prejudiced party to the same position he would have held if there had been no spoliation, the court should not leave Mr. Murray in a better position that his own admissions and the concessions of his counsel would warrant. The court should not immunize Plaintiff from potentially damaging admissions which were not triggered by the wrongful destruction of evidence by CCC. *Cf. United States ex rel. Koch v. Koch Industries, Inc.*, 197 F.R.D. 488, 490 (N.D. Okl. 1999) (noting that sanctions for spoliation should promote the remedial objective of promoting accurate fact-finding by the court or jury). Giving Plaintiff both a rebuttable presumption instruction *and* immunity from his own or his counsel's admissions would do more than level the evidentiary playing field. Mr. Murray's admissions should be admissible and given whatever weight the jury deems appropriate.

Finally, Plaintiff seeks an order awarding reasonable fees and costs incurred in connection with his Motion for Sanctions. In spoliation cases

> an award of costs serves both punitive and remedial purposes: it deters spoliation and compensates the opposing party for the additional costs incurred. Such compensable costs may arise either from the discovery necessary to identify alternative sources of information or from the investigation and litigation of the document destruction itself.

24

*Turner v. Hudson Transit Lines*, 142 F.R.D. 68, 78 (S.D.N.Y. 1991) (internal citations omitted).

*Cf. Mosaid Technologies Inc. v. Samsung Electronics Co. Ltd.*, 348 F. Supp.2d 332, 339 (D. N.J.

2004) (imposing monetary sanctions in additional to an adverse inference jury instruction);

*Trigon Ins. Co. v. United States*, 204 F.R.D. 277, 291 (E.D. Va. 2001) (held that plaintiff was

entitled to recover attorneys fees and costs incurred as a consequence of the spoliation of

evidence, as well as an adverse inference instruction at trial).  *See also Markham v. National*

*States Insurance Co.*, 2004 WL 3019308, *12 (W.D. Okla. 2004) (a showing of willfulness or bad

faith is not required where a non-dispositive sanction is imposed).

## CONCLUSION

Accordingly, for the foregoing reasons, Plaintiff Murray's Motion for Sanctions for

Spoliation of Evidence (Document # 38), filed on April 8, 2005, is GRANTED IN PART and

DENIED IN PART.  The court finds that Defendant Cars Collision Center failed to take

appropriate steps to preserve evidence that it knew or should have known was relevant to

reasonably foreseeable litigation, and further failed to comply with applicable records retention

regulations.  In light of those findings, this court RECOMMENDS that Plaintiff receive the

benefit of a rebuttal presumption both in connection with the pending motion for summary

judgment and at any subsequent trial.  The court further hereby ORDERS that Defendant Cars

Collision Center pay the reasonable fees and costs incurred by Plaintiff Murray in litigating the

spoliation issue.  Plaintiff is directed to submit a bill of fees and costs within ten (10) days of this

25

Order.  Defendant may file a response within ten (10) days of that submission.

Dated this ____22nd____ day of July, 2005.

BY THE COURT:


/s/ Craig B.  Shaffer
Craig B. Shaffer
United States Magistrate Judge


1.    The missing time cards were discovered shortly after Plaintiff Murray filed the instant
motion for sanctions.

2.    However, Defendant concedes that time cards for all employees at the Pueblo CCC location,
except for Mr. Murray, were saved and belatedly produced in discovery.  As if to belie
Defendant's claim of irrelevance, it appears that Defendant has retained time cards going back to
2002 and 2003 for individuals who are no longer current CCC employees.  Defendant has offered
no explanation for why these time cards would have been retained over a period of years if they
are duplicative of the computer print-outs.

3.    "'Bad faith' is the antithesis of good faith and has been defined in the cases to be when a
thing is done dishonestly and not merely negligently.  It is also defined as that which imports a
dishonest purpose and implies wrongdoing or some motive of self-interest." *Attorneys Title
Guaranty Fund v. Goodman*, 179 F. Supp.2d 1268, 1277 (D. Utah 2001).

4.    The Tenth Circuit has noted that a motion's classification as "dispositive" or "non-
dispositive" turns on the effect of the ruling, and not on a strict reading of the motion's heading.
*See Ocelot Oil Corp. v. Sparrow Industries*, 847 F.2d 1458, 1462 (10th Cir. 1988).  *Cf. First
Union Mortgage Corp. v. Smith*, 229 F.3d 992, 995-96 (10th Cir. 2000) (treating remand order as
dispositive action to the extent it "banishes the entire case from the federal court") and *Pedro v.
Armour Swift-Eckrich*, 118 F. Supp.2d 1155, 1157 (D. Kan. 2000) (finding that denial of a
motion to amend is a dispositive ruling to the extent that the ruling effectively removes a claim or
defense from the case).

5.    *But see Mitchell v. Utah State Tax Commission,* 26 F. Supp.2d at 1326 (holding that a defendant's apparent failure to comply with 29 C.F.R. § 1602 would not protect the plaintiff from her failure to present a *prima facie* case of discrimination).