IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 04–cv–01456–CBS–EWN


STEVE MURRAY,

     Plaintiff,

v.

CARS COLLISION CENTER OF COLORADO, LLC,
an Illinois limited liability company,

     Defendant.

---

## ORDER AND MEMORANDUM OF DECISION

---

     This is an employment discrimination case.  Plaintiff Steve Murray alleges that Defendant, Cars Collision Center of Colorado, LLC, discriminated and retaliated against him in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.A. § 2000e *et seq.* (2005), and 42 U.S.C.A. § 1981 ("section 1981") (2005), by maintaining a hostile work environment, demoting him, complaining about his work performance, and terminating his employment. Additionally, Plaintiff asserts claims for breach of contract and promissory estoppel, based on Defendant's alleged discrimination and retaliation, and seeks exemplary damages on all of his claims.  This matter is before the court on Defendant's "Motion for Partial Summary Judgment," filed March 15, 2005.  Jurisdiction is premised upon 28 U.S.C.A. §§ 1331, 1343, and 1367 (2005).

## FACTS

### 1.    *Factual Background*

Plaintiff, an African-American male, worked for Defendant from September 24, 2002 until

on or about April 14, 2003.  (Compl. ¶¶ 9, 19 [filed July 15, 2004] [hereinafter "Compl."].)

Defendant's general manager at the time, Tim Sewolt, hired Plaintiff.  (Def.'s Mot. for Partial

Summ. J., Mem. of Law in Supp. of Def's Mot. for Partial Summ. J., Statement of Undisputed

Material Facts ¶ 2 [filed March 15, 2005] [hereinafter "Def.'s Br."]; *admitted at* Pl.'s Resp. to

Def's Mot. for Partial Summ. J., Resp. to Statement of Undisputed Material Facts ¶ 2 [filed Apr.

7, 2005] [hereinafter "Pl.'s Resp."].)  Plaintiff stated on his job application that he had worked

from 1980 until 2001 at his father's automobile body shop, "Imo's Body Shop," where he had

performed automobile body work, painting, and detail work.  (*Id*., Statement of Undisputed

Material Facts ¶ 3; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 3.)

Additionally, Plaintiff stated on his job application that he had graduated from a vocational

technical school, where he completed an automobile body repair program.  (*Id*., Statement of

Undisputed Material Facts ¶ 4; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed

Material Facts ¶ 4.)

Plaintiff signed Defendant's job application, which contained a disclaimer stating: (1) if

hired, the applicant (Plaintiff) could be terminated with or without cause or notice; (2) no

employment contract existed between the parties; and (3) no subsequent oral or written

statements would create an express or implied contract unless signed by Defendant's president.

(*Id*., Statement of Undisputed Material Facts ¶ 6; *admitted at* Pl.'s Resp., Resp. to Statement of

Undisputed Material Facts ¶ 6.)  Further, upon being hired, Plaintiff signed a form in which he

acknowledged that he would be an at-will employee at all times during his employment with Defendant.  (*Id.*, Statement of Undisputed Material Facts ¶ 5; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 5.)

The remaining facts are highly disputed in this case.  Defendant contends that within a week of Plaintiff's hire, Plaintiff's skills as an automobile body technician proved to be lacking. (Def.'s Br., Statement of Undisputed Material Facts ¶ 7.)  Plaintiff maintains that he is a skilled automobile body technician with thirty years of experience and he had no difficulty performing automobile body work for Defendant.  (Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 8.)  Plaintiff contends that Defendant gave him a lower commission rate than Defendant's Caucasian employees.  (*Id.*, Statement of Additional Disputed Facts ¶ 1.)  Defendant maintains that Plaintiff received a lower commission rate not because of his race, but because Plaintiff did not own his own tools.  (Def.'s Reply in Supp. of its Mot. for Summ. J., Resp. Concerning Disputed Facts ¶ 1 [filed Apr. 29, 2005] [hereinafter "Def.'s Reply"]; Pl.'s Resp., Ex. 16 [New Hire Form].)  The parties do not contest that Plaintiff did not have tools and Sewolt lent Plaintiff tools.  (Pl.'s Resp., Ex. 5 at 84 [Dep. of Steve Murray].)

### a.   *Plaintiff's Allegations of Harassment*

Plaintiff asserts that shortly after he began working for Defendant, Ron Beeman, a Caucasian co-worker, began racially harassing Plaintiff.  (*Id.*, Statement of Additional Disputed Facts ¶ 2; Compl. ¶ 11.)  Plaintiff maintains that throughout the course of his employment, Beeman regularly harassed Plaintiff and directed racially and sexually charged derogatory remarks at Plaintiff, including calling Plaintiff "brown shit," stating Plaintiff was "brown because [Plaintiff] was full of shit," and telling Plaintiff to "suck my dick."  (*Id.*, Statement of Additional Disputed

Facts ¶¶ 2, 19, 20, Ex. 4 ¶¶ 3, 8 [Aff. of Steve Murray]; Compl. ¶¶ 11, 15.)  Plaintiff maintains, and Defendant denies, that he reported Beeman's harassment to Sewolt within ten to fourteen days after beginning to work for Defendant.  (*Id.*, Statement of Additional Disputed Facts ¶ 3, Ex. 5 at 45–46 [Dep. of Steve Murray].)  Defendant contends that: (1) Plaintiff never reported any racial or other harassment to Sewolt; (2) the only derogatory remark Defendant knew Beeman made was the race-neutral "suck my dick" comment, for which Beeman received a two-day suspension; and (3) Sewolt never heard or witnessed Beeman harassing Plaintiff.  (Def.'s Reply, Resp. Concerning Disputed Facts ¶¶ 2, 3, 19, 22.)

> ### b.      *Plaintiff's Reassignment to the Automobile Detail Department*

Plaintiff denies the following factual allegations.  Defendant asserts that Plaintiff's work was of poor quality, and Plaintiff worked too slowly, often failed to include important parts in repair jobs, often did not know where certain automobile parts belonged on the automobile, did not know how to weld, and routinely attempted to hide his mistakes.  (Def.'s Br., Statement of Undisputed Material Facts ¶¶ 8, 9, 18, 19; *denied at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 8, 9, 18, 19.)  Defendant maintains that Plaintiff was unable to perform basic automobile body work, and other employees had to assist Plaintiff with basic tasks. (*Id.*, Statement of Undisputed Material Facts ¶ 10; *denied at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 10.)  Defendant asserts further that the errors other employees made were minor in comparison to those made by Plaintiff.  (*Id.*, Statement of Undisputed Material Facts ¶ 11; *denied at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 11.) Defendant alleges that Sewolt would remain at work after hours to complete or perfect work that Plaintiff had either not performed or had performed poorly.  (*Id.*, Statement of Undisputed

Material Facts ¶ 12; *denied at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 12.)

Based on the foregoing complaints, Defendant contends that approximately one or two weeks after Sewolt hired Plaintiff, Sewolt transferred Plaintiff from the automobile body technician department to the automobile body detail department. (*Id.*, Statement of Undisputed Material Facts ¶ 13; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 13.) Plaintiff asserts that Sewolt: (1) transferred Plaintiff within a few days of Plaintiff's voicing complaints about racial harassment, and (2) told Plaintiff that he made the transfer because Defendant needed help in the automobile detail department. (Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 13.) Upon transfer to the automobile detail department, Defendant placed Plaintiff on an "hourly wage compensation package," paying ten dollars per hour. (Def.'s Br., Statement of Undisputed Material Facts ¶ 14; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 14.) Defendant maintains that Plaintiff was paid two dollars more per hour than the only other employee in the automobile detail department, TJ Gash, who was Caucasian and who had been working in the department longer that Plaintiff. (*Id.*, Statement of Undisputed Material Facts ¶ 15.) Plaintiff maintains that he and Gash earned identical wages. (Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 15.)

Defendant contends, and Plaintiff denies, that shortly after Plaintiff's transfer to the automobile detail department, Plaintiff's work performance declined in quality. (Def.'s Br., Statement of Undisputed Material Facts ¶ 20; *denied at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 20.) More specifically, Defendant maintains that Plaintiff failed to clean the shop as required, took excessive breaks, was routinely tardy to arrive at work, and

garnered complaints for leaving automobiles dirty after performing work on them.  (*Id*., Statement of Undisputed Material Facts ¶ 21, 24.)  Plaintiff asserts that: (1) the quality of his work did not decline; (2) he did not take excessive breaks; (3) he was not routinely tardy to arrive at work; (4) he lost morale and pride in his work because of harassment and discrimination; (5) the cleaning and maintenance work he was asked to do was "demeaning" and "far beneath his level of skill and experience;" and (6) customers complemented his work.  (Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 19, 20, 21, 24.)  The parties do not contest that Plaintiff's co-worker Gash noticed a decline in Plaintiff's work ethic and a slowing of Plaintiff's work pace. (Def.'s Br., Statement of Undisputed Material Facts ¶ 23; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 23.)

### c.    *Termination of Plaintiff's Employment*

The parties do not contest that toward the end of Plaintiff's employment, Defendant transferred Plaintiff back to the automobile body technician department with salary by commission.  (*Id.*, Statement of Undisputed Material Facts ¶ 28; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 28.)  Defendant contends that John Gwinner, a quality control representative for Defendant, observed Plaintiff performing substandard work, and reported his observations to Sewolt.  (*Id.*, Statement of Undisputed Material Facts ¶ 29, Ex. A–9 ¶¶ 5, 6 [Aff. of John Gwinner].)  On or about April 14, 2003, after receiving Gwinner's input, Sewolt terminated Plaintiff's employment.  (*Id.*, Statement of Undisputed Material Facts ¶ 31; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 31.)  Defendant contends, and Plaintiff denies, that after terminating Plaintiff's employment, it discovered that Plaintiff had misrepresented his education and work experience on his job application.  (*Id.*,

Statement of Undisputed Material Facts ¶ 32; *denied at* Pl.'s Resp., Resp. to Statement of

Undisputed Facts ¶ 32.)  Specifically, Defendant asserts that on his job application, Plaintiff stated

he worked at Imo's Body Shop from 1980 through 2001, but Plaintiff testified Imo's Body Shop

stopped offering services to the public in 1984.  (*Id.*, Ex. A–2 [Application for Employment], Ex.

A–3 at 9 [Dep. of Steven Murray].)  Plaintiff maintains that he worked at the same automobile

body shop from 1980 through 2001, which was owned Plaintiff's father, Imogene Murray.  (Pl.'s

Resp., Resp. to Statement of Undisputed Material Facts ¶ 32, Ex. 3 ¶ 2 [Aff. of Imogene

Murray], Ex. 4 ¶ 15 [Aff. of Steve Murray].)  Plaintiff asserts that after his father retired in 1984,

Plaintiff continued operations of the automobile body shop under the business name "Imo's Body

Shop" through 1989, and subsequently changed the business name of the automobile body shop

to "Steve's Body Shop."  (*Id.*, Ex. 4 ¶ 15 [Aff. of Steve Murray].)  Plaintiff contends that he used

the name "Imo's Body Shop" on Defendant's job application, because that name had been in use

longer than "Steve's Body Shop," and to him, the two entities were the same business.  (*Id.*)

### 2.    *Procedural History*

On July 15, 2004, Plaintiff filed a complaint in this court.  (Compl.)  Plaintiff alleges three

claims for relief: (1) racial discrimination under Title VII and section 1981 by Defendant's

maintenance of a hostile work environment, demotion of Plaintiff, complaints about Plaintiff's

work performance, and termination of Plaintiff's employment; (2) retaliation under Title VII and

section 1981 by Defendant's demotion of Plaintiff, complaints about Plaintiff's work performance,

and termination of Plaintiff's employment; and (3) breach of implied contract and/or promissory

estoppel by Defendant's termination of Plaintiff's employment.  (Compl. ¶¶ 20–33.)  On August

30, 2004, Defendant filed an answer.  (Answer [filed Aug. 30, 2004].)

On March 15, 2005, Defendant filed a motion for partial summary judgment.  (Def.'s Br.)

Defendant argues that Plaintiff cannot maintain his claims for: (1) discrimination or retaliation

under section 1981 or Title VII, except for his claim for maintenance of a hostile work

environment, because Plaintiff cannot establish the requisite *prima facie* cases, or if he can,

Plaintiff cannot debunk Defendant's legitimate nondiscriminatory reasons for its actions as

pretextual; and (2) breach of contract and/or promissory estoppel because Plaintiff was an at-will

employee and no implied contract or promise existed between the parties.  (Def.'s Br. at 9–24.)

On April 7, 2005, Plaintiff filed a response to Defendant's motion.  (Pl.'s Resp.)  On April 29,

2005, Defendant filed a reply in support of its motion.  (Def.'s Reply.)  This matter is fully

briefed.

On April 8, 2005, Plaintiff filed a motion for sanctions for spoliation of evidence.  (Mot.

for Sanctions for Spoliation of Evid. [filed Apr. 8, 2005].)  Plaintiff argued that Defendant

intentionally destroyed crucial evidence in the form of Plaintiff's time cards, which purportedly

would establish Plaintiff's work attendance history.  (*Id.* at 4–10.)  Plaintiff argued further that

such records of his work attendance history would be critical in this case because of Defendant's

contention that it terminated Plaintiff's employment in part because of repeated tardiness, missed

work, and Plaintiff's practice of leaving work early.  (*Id.* at 2.)  Plaintiff requested that this court:

(1) assume an adverse inference against Defendant that the time cards would not have supported

its asserted reasons for terminating Plaintiff's employment, and that such inference is sufficient

evidence of pretext to deny Defendant's motion for summary judgment; (2) exclude at trial

testimony and other evidence regarding Plaintiff's alleged tardiness and unexcused absences; and

(3) grant Plaintiff attorneys' fees and costs as a sanction for Defendant's destruction of evidence.

(*Id.* at 9–10.)  On April 27, 2005, Defendant filed a response to Plaintiff's motion, in which it

argued that it did not misplace or destroy Plaintiff's time cards willfully or in bad faith.  (Def.'s

Resp. to Pl.'s Mot. for Sanctions for Spoliation of Evid. at 1–7 [filed Apr. 27, 2005].)

On July 22, 2005, Magistrate Judge Craig Shaffer found that Defendant failed to take

appropriate steps to preserve evidence it knew or should have known would be relevant to

reasonably foreseeable litigation and failed to comply with applicable records retention

regulations.  (Mem. Order and Recommendation Regarding Pl.'s Mot for Sanctions for Spoliation

of Evid. at 25.)  Magistrate Judge Shaffer granted in part and denied in part Plaintiff's motion.

(*Id.*)  Specifically, Magistrate Judge Shaffer: (1) recommended that Plaintiff receive the benefit of

a rebuttable presumption in connection with the motion for summary judgment before this court

and with any subsequent trial; and (2) ordered Defendant to pay Plaintiff's attorneys' fees and

costs incurred in litigation the spoliation issue.  (*Id.* at 25–26.)  On November 21, 2005, I issued

an order accepting Magistrate Judge Shaffer's recommendation.  (Order Accepting Magistrate

Judge's Recommendation [filed Nov. 21, 2005].)  Accordingly, for the purposes of this Order,

Plaintiff shall receive the benefit of a rebuttable presumption in his favor as to the content and

implications of the time cards.

## ANALYSIS

### 1.    *Standard of Review*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant

summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c);

*see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

**2.      Evaluation of Claims**

> **a.      Plaintiff's Claims for Discrimination and Retaliation Under Section 1981**

Defendant argues that it is entitled to partial summary judgment on Plaintiff's claims for discrimination and retaliation under section 1981. (Def.'s Br. at 13–18, 19–21.) Plaintiff asserts that Defendant: (1) discriminated against him on the basis of his race in violation of section 1981 by maintaining a hostile work environment; and (2) discriminated and retaliated against him on the

basis of race in violation of section 1981 by demoting him, complaining about his work performance, and terminating his employment.  (Compl. ¶¶ 21, 25, 26.)  Defendant argues that Plaintiff: (1) cannot maintain his claims that Defendant discriminated or retaliated against him by demoting him, complaining about his work, and terminating his employment, because Plaintiff cannot establish that Defendant's legitimate nondiscriminatory reasons for its actions were pretextual; and (2) cannot establish a *prima facie* case for retaliatory discharge.  (Def.'s Br. at 13–18.)

### i.      *Discrimination under Section 1981*

Section 1981 proscribes "all intentional racial discrimination in the making or enforcement of private or public contracts.  In particular, section 1981 protects employees from racial discrimination both in entering into an employment contract and in enjoying the benefits, privileges, terms and conditions of employment."  *Exum v. United States Olympic Comm.*, 389 F.3d 1130, 1134 (10th Cir. 2004) (citations omitted).  Since Plaintiff provides no direct evidence of intentional racial discrimination, Plaintiff must rely upon the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Patterson v. McLean Credit Union*, 491 U.S. 164, 186–87 (1989) (applying *McDonnell Douglas* framework to section 1981 claim); *Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004) (same).  Under the *McDonnell Douglas* framework, "the plaintiff has the initial burden of presenting a *prima facie* case of discrimination."  *Id.*  If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its adverse employment actions against the plaintiff.  *Id.* at 1134–35.  If the defendant satisfies this burden, the burden then shifts

back to the plaintiff to demonstrate that the reasons proffered by the defendant are pretextual.  *Id.*

at 1135 (citations omitted).  I address each stage in turn.

### *(1)*      *Prima Facie Case*s

Before turning to the *prima facie* case requirements, I note that adverse employment

action is a fundamental requirement to maintain an anti-discrimination claim under section 1981.

*See Davis v. KARK-TV, Inc.*, 421 F.3d 699 (8th Cir. 2005).  Plaintiff alleges that Defendant took

the following adverse employment actions against him: (1) terminating his employment; (2)

demoting him by reassigning him to the automobile detail department; and (3) complaining about

his work performance.  (Compl. ¶ 21.)  Generally, for an employment action to be considered

adverse, the action "must be materially adverse to the employee's job status. . . .  The adverse

action must amount to a significant change in employment status, such as firing, failing to

promote, reassignment with significantly different responsibilities, or a decision causing a

significant change in benefits."  *Duncan v. Manager, Dep't of Safety*, 397 F.3d 1300, 1314 (10th

Cir. 2005) (citation and internal quotation marks omitted).  Thus, Plaintiff's termination is clearly

an appropriate subject of his claims.  Plaintiff also alleges that Defendant demoted him in

reassigning him to the automobile detail department.  (Compl. ¶ 21.)  Defendant characterizes the

reassignment as a non-adverse lateral transfer.  (Def.'s Br. at 16.)  The parties do not dispute that

Plaintiff's job responsibilities changed significantly, from performing automobile body work to

performing automobile detail work and maintenance work.  (Def.'s Br., Statement of Undisputed

Facts ¶¶ 13, 19, Ex. A–1 at 101 [Dep. of Timothy Sewolt]; *admitted at* Pl.'s Resp., Resp. to

Statement of Undisputed Material Facts ¶¶ 13, 19, Ex. 4 ¶ 7 [Aff. of Steve Murray].)  Thus,

Plaintiff's reassignment to the automobile detail department is a proper subject of his claims.

*Duncan*, 397 F.3d at 1314.  Further, Plaintiff alleges that Defendant made unfounded complaints

regarding Plaintiff's work performance.  The Tenth Circuit has held that "[d]isciplinary

proceedings, such as warning letters and reprimands can constitute [] adverse employment

action[s]."  *Medina v. Income Support Div.*, 413 F.3d 1131, 1137 (10th Cir. 2005).  Here,

Plaintiff appears to argue that Defendant criticized Plaintiff's work performance by keeping track

of Plaintiff's attendance and timeliness.[1]  (Pl.'s Resp at 40.)  General criticism and attendance

tracking do not rise to the level of disciplinary reprimands.  Indeed, Plaintiff asserts that he "was

not warned or disciplined for any of [the] alleged performance deficiencies" and "did not get any

disciplinary warnings prior to his termination."  (*Id.* at 40, Statement of Additional Disputed Facts

¶ 78.)  Accordingly, Defendant's complaints about Plaintiff's work performance are not adverse

employment actions and not proper subjects of his claims.

In order to establish a *prima facie* case of discriminatory demotion, Plaintiff must

demonstrate that: (1) he is a member of a protected class; (2) he was adversely affected by

defendant's employment decision; (3) he was qualified for the position at issue; and (4) the job

from which he was demoted was not eliminated.  *Jones v. Denver Post Corp.*, 203 F.3d 748, 753

(10th Cir. 2000) (citation omitted).  Further, in order to establish a *prima facie* case for

discriminatory discharge, Plaintiff must demonstrate that: (1) he is a member of a protected class;

---

[1]Plaintiff's argument for retaliatory criticism contemplates only attendance tracking.  (Pl.'s
Resp. at 40.)  In his submissions, Plaintiff makes passing reference to a "warning notice," which
outlined an October 2, 2002 oral warning and a January 30, 2003 written warning purportedly
issued to Plaintiff.  (*Id.* at 34, 36.)  Plaintiff suggests Sewolt manufactured and back-dated the
warning notice on the day he decided to terminate Plaintiff.  (*Id.*)  Moreover, Plaintiff makes his
allegations and arguments regarding the October 2002 and January 2003 warnings in rebuttal to
Defendant's purported reasons for terminating Plaintiff, and not as independent instances of
discriminatory actions taken against him.  (*Id.*)

(2) he was qualified and satisfactorily performing his job; and (3) he was discharged under circumstances giving rise to an inference of discrimination. *Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004). As an African-American, Plaintiff is a member of a protected class. Since Defendants do not argue to the contrary, and this case can be resolved at subsequent *McDonnell Douglas* stages, I will assume, *aguendo*, that Plaintiff can sufficiently establish the requisite *prima facie* cases for his claims of discriminatory demotion and termination.

### (2)    *Legitimate Nondiscriminatory Reason*

Once a plaintiff makes a *prima facie* showing, the defendant "must articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1212 (10th Cir. 2003). "The defendant does not at this stage of the proceedings need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a nondiscriminatory fashion." *Ingels v. Thiokol Corp.*, 42 F.3d 616, 621 (10th Cir. 1994) (citation and internal quotation marks omitted). Nonetheless, the defendant's explanation of its legitimate reasons must be clear and reasonably specific. *Drake v. Ft. Collins*, 927 F.2d 1156, 1160 (10th Cir. 1991) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258 [1981]).

Here, Defendant asserts that it: (1) demoted Plaintiff because Sewolt did not believe that Plaintiff performed automobile body work at a level consistent with Defendant's standards; and (2) terminated Plaintiff's employment because Plaintiff was often tardy to arrive at work, had a poor work ethic, and did not adequately perform his duties as an automobile body technician or automobile detail worker. (Def.'s Br. at 17; Def.'s Reply at 33–36.) Defendant has thus satisfied

its burden to present clear and reasonably specific legitimate nondiscriminatory reasons for its actions.  Accordingly, I progress to the third *McDonnell Douglas* stage, pretext.

### *(3)      Pretext*

"An employee may demonstrate pretext by showing the employer's proffered reason was so inconsistent, implausible, incoherent, or contradictory that it is unworthy of belief." *Stover v. Martinez*, 382 F.3d 1064, 1071 (10th Cir. 2004); *see also Exum*, 389 F.3d at 1135.  The relevant inquiry is whether Defendant had a good faith or honest belief that its legitimate nondiscriminatory reasons for terminating plaintiff were proper.  *See McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998) (holding that "[t]he test is [the] good faith belief' of the defendant in taking its actions, and that "such belief would not be pretextual even if the belief was later found to be erroneous").  Accordingly, "[i]t is the perception of the decision maker [that] is relevant, not plaintiff's perception of [himself]." *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988)  (citation omitted).

Here, Defendant argues that it demoted Plaintiff because he did not perform automobile body work at a level consistent with Defendant's standards.  (Def.'s Br. at 17.)  Among Defendant's complaints with the quality of Plaintiff's work were that Plaintiff worked too slowly and Sewolt had to finish or perfect Plaintiff's work after hours.  (*Id.*, Ex. A–1 at 26, 135 [Dep. of Timothy Sewolt].)  Plaintiff asserts that Sewolt never stayed after hours to complete or perfect Plaintiff's work, but furnishes no admissible evidence in support of his assertion.  (Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 12.)  Plaintiff asserts further that he has more than thirty years of experience as an automobile body technician, possesses the skills necessary to perform Defendant's work, and had no difficulty performing the work.  (*Id.*, Resp. to Statement

of Undisputed Facts ¶¶ 8–10, Ex. 4 ¶¶13, 15–16, 19 [Aff. of Steve Murray].)  In support of his

contentions, Plaintiff relies upon several affidavits, including his own affidavit and those of his

father and two co-workers.  First, Plaintiff's subjective evaluation of his own performance is not

relevant to this court's analysis regarding pretext.  *Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 988

(10th Cir. 1996) (citing *Branson*, 853 F.2d at 772).  Moreover, Plaintiff's father does not purport

to have personal knowledge of the quality of the particular work Plaintiff performed for

Defendant.  (Pl.'s Resp., Ex. 3 ¶¶ 1–12 [Aff. of Imogene Murray].)  Plaintiff's father's

unsubstantiated and conclusory statements regarding the quality of Plaintiff's work cannot serve

to rebut Sewolt's opinion.  Further, Plaintiff's two co-workers both state that Plaintiff performed

good automobile body work, but that Plaintiff worked more slowly than the other automobile

body technicians.  (*Id.*, Ex. 7 ¶ 3 [Aff. of T.J. Gash], Ex. 8 ¶ 6 [Aff. of Paul Newey].)  Rather than

rebutting Defendant's legitimate nondiscriminatory reasons, Plaintiff's co-workers' statements

bolster Sewolt's complaint that Plaintiff worked too slowly for Defendant's standards.  "[C]ourts

are not free to second-guess an employer's business judgment."  *Branson v. Price River Coal

Co.*, 853 F.2d 768, 772 (10th Cir. 1988) (citation omitted).  Plaintiff's proffered statements either

support or ineffectively rebut Sewolt's statements.  As such, Plaintiff has failed to establish a

genuine issue of material fact as to whether Defendant's legitimate nondiscriminatory reasons for

demoting him were pretextual.

  With respect to Plaintiff's discharge, Defendant asserts that it terminated Plaintiff's

employment because: (1) both Sewolt and Gwinner opined that Plaintiff did not perform work

befitting Defendant's standards, (2) Plaintiff's work performance declined while in the detail

department, (3) Plaintiff had multiple accidents in company and customer vehicles, and (4)

Plaintiff was often tardy to arrive at work.  (Def.'s Br. at 17.)  With respect to Defendant's

assertion that Sewolt believed Plaintiff's work did not satisfy Defendant's standards, the same

analysis regarding Plaintiff's demotion outlined above applies.  In further support of its assertion,

Defendant points to Gwinner's affidavit, in which Gwinner states that he witnessed Plaintiff

performing substandard work and reported what he saw to Sewolt.  (Def.'s Br., Ex A–9 ¶¶ 5, 6

[Aff. of John Gwinner].)  Plaintiff admits that Gwinner "pointed out deficiencies" in Plaintiff's

work and suggested to Sewolt that Plaintiff should be discharged, but argues that Gwinner's

opinion was tainted by information received from Beeman.  (Pl.'s Resp. at 33, Statement of

Additional Undisputed Facts ¶ 100.)  Plaintiff's argument is unavailing.  The only support Plaintiff

proffers for his contention is that Gwinner and Beeman had known eachother for some time

before coming to work for Defendant.  (*Id.*, Statement of Additional Undisputed Facts ¶ 97, Ex. 9

at 17 [Dep. of Timothy Sewolt].)  Plaintiff wholly fails to furnish any admissible evidence to

support his argument that Gwinner's opinion was "tainted" or discriminatory.  Thus, Plaintiff

cannot establish a genuine issue of material fact as to whether Defendant's reliance on Gwinner's

opinion was in bad faith, or whether Defendant's legitimate nondiscriminatory reason for

terminating Plaintiff that Plaintiff performed substandard work was a pretext for discrimination.

Further, Defendant argues that it discharged Plaintiff because his work performance while in the

detail department declined.  (Def.'s Br. at 17, Ex. A–1 at 217 [Aff. of Timothy Sewolt].)  To

rebut this argument, Plaintiff offers his own assessment of his abilities and the testimony of his co-

worker Gash.  As previously noted, an employee's subjective evaluation of his own performance

is not relevant to the present analysis.  *Furr*, 82 F.3d at 988.  Moreover, Gash testified that while

in the detail department, Plaintiff's work ethic suffered, Plaintiff's pace declined, and Plaintiff's

"effort started falling off." (Pl.'s Resp., Ex. A–6 [Dep. of Tyler Gash].) Thus, Plaintiff cannot

establish a genuine issue of fact as to whether Defendant's reason that Plaintiff's work

performance declined was pretextual. Additionally, Defendant argues that it terminated Plaintiff

in part because he was involved in several accidents with company and customer vehicles. (Def.'s

Br. at 17.) Plaintiff counters that the accidents in which he was involved were minor. (Pl.'s Resp.

at 35–36.) Importantly, Plaintiff admits that he was involved in accidents and caused damage to

the company vehicle and to two customer vehicles. (*Id.*, at 35–36, Ex. 5 at 108 [Dep. of Steve

Murray].) Thus, Plaintiff cannot establish a genuine issue of fact as to whether Defendant's

reason that Plaintiff was involved in accidents was pretextual. Finally, Defendant argues that it

terminated Plaintiff for his repeated tardiness to work. (Def.'s Br. at 17.) Plaintiff counters that

Defendant lacks documentation to support its contention — namely, Plaintiff's time cards — and

asserts that he was "rarely late to work." (Pl.'s Resp. at 34–35, Ex. 4 ¶ 26 [Aff. of Steve

Murray].) Tellingly, in a letter to the Colorado Civil Rights Division regarding his complaint

before that entity, Plaintiff admitted that he "was in fact late for work numerous times," and had a

"somewhat regretful on-time history." (Def.'s Reply at Ex. A–16 [12/23/03 Letter to Colorado

Civil Rights Division].) Plaintiff's admission trumps the rebuttable presumption regarding the

content and implications of his missing time cards. In light of his admission, Plaintiff cannot

establish a genuine issue of fact as to whether Defendant's reason that Plaintiff was tardy was

pretextual.

Plaintiff correctly notes that evidence of an employer's failure to remedy harassment by

employees may serve as proof that the employer's proffered nondiscriminatory reason for the

discharge was pretextual. *Brown v. Parker-Hannifin Corp.*, 746 F.2d 1407, 1412 (10th Cir.

1984).  To establish pretext, Plaintiff offers a statement by his co-worker Paul Newey that Sewolt

was present when other employees called Plaintiff a "lazy nigger," and did not make efforts to

stop such comments.  (Pl.'s Resp., Ex. 8 ¶ 2 [Aff. of Paul Newey].)  This evidence cannot

overcome Plaintiff's own admissions and offered statements supporting or ineffectively rebutting

Defendant's legitimate nondiscriminatory reasons for demoting and discharging him.

Accordingly, Plaintiff has not met his burden to demonstrate Defendant's reasons as pretextual

and Defendant is entitled to summary judgment on Plaintiff's claims for discriminatory demotion

and termination under section 1981.

### ii.      *Retaliation Under Section 1981*

Defendant claims that it is entitled to summary judgment on Plaintiff's claims for

retaliation under section 1981  (Def.'s Br. at 20–23.)  The language of section 1981 has been

interpreted to include retaliation lawsuits.  *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1258

(10th Cir. 2001).  The *McDonnell Douglas* framework, described above, applies to section 1981

retaliation claims.  *O'Neal*, 237 F.3d at 1252; *Roberts v. Roadway Express*, 149 F.3d 1098, 1103

(10th Cir. 1998).  Plaintiff alleges that Defendant violated section 1981 when it retaliated against

him for objecting to Defendant's racially hostile work environment by demoting him and

terminating his employment.  (Compl. ¶¶ 25–26.)  Defendant contends that: (1) Plaintiff cannot

maintain his claim for retaliatory discharge because he cannot establish the requisite *prima facie*

case; and (2) Plaintiff cannot maintain his claim for retaliatory demotion because Plaintiff cannot

debunk Defendant's legitimate nondiscriminatory reasons for its actions as pretextual.[2]  (Def.'s

---

[2]I do not discuss Plaintiff's claim for retaliatory criticism of his work performance, because as discussed *supra* at *Analysis* § 2ai(1), Defendant's criticism does not amount to an adverse employment action.

Br. at 20–23.)  Accordingly, I will assume, *arguendo*, that Plaintiff can establish a *prima facie* case for demotion, and only discuss the first *McDonnell Douglas* stage with respect to Plaintiff's claim for retaliatory discharge.

### *(1)     Prima Facie Case*

In order to establish a *prima facie* case for retaliation, Plaintiff must demonstrate that: (1) he engaged in protected opposition to discrimination; (2) he was subject to adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. *Roberts*, 149 F.3d at 1103.  Plaintiff asserts that he reported Beeman's harassment to Sewolt on or about October 8, 2002, sometime between ten and fourteen days after beginning to work for Defendant.  (Pl.'s Resp., Statement of Additional Disputed Facts ¶ 3, Ex. 5 at 47 [Aff. of Steven Murray]; Compl. ¶¶ 13–14.)  Informal complaints to superiors constitute protected activity. *O'Neal*, 237 F.3d at 1255.  As previously discussed, Plaintiff's discharge was an adverse employment action.  Accordingly, I turn to the causal connection requirement.

Defendant argues that Plaintiff cannot establish a *prima facie* case because he cannot establish the requisite causal connection between the protected opposition and Plaintiff's discharge because Gwinner, who recommended Plaintiff's discharge to Sewolt, did not know that Plaintiff had reported racial harassment.  (Def.'s Br. at 20–21.)  It stands to reason that a retaliator must be aware of the action for which he is retaliating.  *See Dowe v. Total Action Against Poverty*, 145 F.3d 653, 657 (4th Cir. 1998) (holding "employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case.")  Here, Defendant admits that Sewolt was the actor who "finally did terminate [] Plaintiff."  (Def.'s Br. at 21.)  Although Gwinner may not have been aware of Plaintiff's report

-20-

to Sewolt, Sewolt certainly would have been aware.  Poignantly, it is Sewolt's awareness that

dooms Plaintiff's claim.  Plaintiff asserts that he reported Beeman's harassment to Sewolt on or

about October 8, 2002.[3]  (Pl.'s Resp., Statement of Additional Disputed Facts ¶ 3, Ex. 5 at 47

[Aff. of Steven Murray]; Compl. ¶¶ 13–14; Def's Br. Ex A–16 [12/23/03 Letter to Colorado Civil

Rights Division].)  Defendant terminated Plaintiff's employment on April 14, 2003.  (Compl. ¶

19.)  A plaintiff may establish a causal connection "by evidence of circumstances that justify an

inference of retaliatory motive, such as protected conduct closely followed by adverse action."

*Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1982).  "Unless there is

very close temporal proximity between the protected activity and the retaliatory conduct, the

plaintiff must offer additional evidence to establish causation." *O'Neal*, 237 F.3d at 1253 (citing

*Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1395 [10th Cir. 1997]).  More specifically, the

Tenth Circuit has found that a "six-week period between protected activity and adverse action

may be sufficient, standing alone, to show causation, but a three-month period, standing alone, is

insufficient." *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004); *see Anderson v.

Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999).  In the instant case, the six-month

time lapse between Plaintiff's alleged protected activity and Defendant's adverse employment

action does not support a causal connection, and is thus fatal to Plaintiff's claim for retaliation.

---

[3]Plaintiff alleges that in total, he complained "three or four times" but makes no specifications and submits neither argument nor evidence to establish when he allegedly made the other reports.  (Compl., *passim*; Pl.'s Resp., Statement of Additional Disputed Facts ¶ 23,  Ex. 5 at 63 [Dep. of Steven Murray], *passim*.)  Moreover, in a letter to the Colorado Civil Rights Division regarding his complaint, Plaintiff stated that he "confronted his former employer about the abuse he endured only once — in October 2002."  (Def's Br. Ex A–16 [12/23/03 Letter to Colorado Civil Rights Division].)  Consequently, I analyze Plaintiff's claim under his own words, as if he had reported the harassment "only once."

Accordingly, Plaintiff has failed to establish a *prima facie* case, and Defendant is entitled to summary judgment on Plaintiff's claim for retaliatory termination under section 1981.

Turning to Plaintiff's claim for retaliatory demotion, because Defendant does not argue to the contrary, I assume, *arguendo*, that Plaintiff can establish a *prima facie* case and progress to the subsequent *McDonnell Douglas* stages. With respect to Plaintiff's claim for retaliatory demotion, Defendant offers precisely the same legitimate nondiscriminatory reasons as it offered regarding Plaintiff's claim for discriminatory demotion. (Def.'s Br. at 22.) In his response, Plaintiff offers no argument to demonstrate Defendant's reasons for demoting Plaintiff as pretext, but focuses instead on the causal connection requirement of a *prima facie* case. (Pl.'s Resp. at 39.) It is not this court's task to construct Plaintiff's arguments for him, and I decline the opportunity to do so at this juncture. Plaintiff has wholly failed to establish a genuine issue of fact as to whether Defendant's proffered legitimate nondiscriminatory reasons for demoting him were pretext. Accordingly, Defendant is entitled to summary judgment on Plaintiff's claims for retaliatory demotion and termination under section 1981.

> b.    *Plaintiff's Claims for Discrimination and Retaliation Under Title VII*

Defendant argues that it is entitled to partial summary judgment on Plaintiff's claims for discrimination and retaliation under Title VII. (Def.'s Br. at 18, 20–23.) Plaintiff asserts that Defendant: (1) discriminated against him on the basis of his race in violation of Title VII by maintaining a hostile work environment; and (2) discriminated and retaliated against him on the basis of race in violation of Title VII by demoting him, complaining about his work performance, and terminating his employment. (Compl. ¶¶ 21, 25, 26.) Defendant argues that Plaintiff cannot maintain his claims that Defendant discriminated or retaliated against him by demoting him,

complaining about his work, and terminating his employment because Plaintiff cannot establish

that Defendant's legitimate nondiscriminatory reasons for its actions were pretextual and cannot

establish a *prima facie* case for retaliatory discharge.  (Def.'s Br. at 18, 20–23.)

Under Title VII, it is an "unlawful employment practice for an employer . . . to

discriminate against any individual . . . because of such individual's race, color, religion, sex, or

national origin."  *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 92–93 (2003) (citing 42 U.S.C. §

2000e-2[a][1]).  Moreover, under Title VII, it is unlawful "'for an employer to discriminate

against any of [its] employees . . . because [the employee] has opposed any practice made an

unlawful employment practice by [Title VII], or because [the employee] has made a charge,

testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under

[Title VII].'"  *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 269 (2001) (quoting 42 U.S.C. §

2000e-3[a]).

"In racial discrimination suits, the elements of a plaintiff's case are the same, based on the

disparate treatment elements outlined in *McDonnell Douglas*, whether that case is brought under

[section] [] 1981 [] or Title VII."  *Drake v. Ft. Collins*, 927 F.2d 1156, 1162 (10th Cir. 1991);

*see Baca v. Sklar*, 398 F.3d 1210, 1218 (10th Cir. 2005).  The elements of a retaliation claim

under section 1981 are "identical" to those required under Title VII.  *Roberts*, 149 F.3d at 1103

n.1.  Consequently, for the same reasons outlined *supra* at *Analysis* § 2aii, Defendant is entitled to

partial summary judgment on Plaintiff's claims for discrimination and retaliation under Title VII.

       *c.*       *Plaintiff's Claims for Breach of Contract and Promissory Estoppel*

Defendant asserts that it is entitled to summary judgment on Plaintiff's third claim for

breach of contract and promissory estoppel because Plaintiff was an at-will employee and cannot

establish the existence of either an implied contract or a promise upon which he reasonably could

have relied.  (Def.'s Br. at 9.)   Plaintiff argues that: (1) anti-discrimination and equal employment

opportunity policies outlined in Defendant's employee handbook created an implied contract and

altered Plaintiff's at-will employment with Defendant; and (2) disclaimers contained in

Defendant's employment application, probationary period acknowledgment form, and employee

handbook were insufficient to defeat Defendant's intentions to alter Plaintiff's at-will employment.

(Compl. ¶¶ 30–32; Pl.'s Resp. at 28–30.)

      In Colorado, an employee who is hired for an indefinite period of time is presumed to be

an at-will employee whose employment may be terminated without cause or notice.  *Continental*

*Airlines, Inc. v. Keenan*, 731 P.2d 708, 711 (Colo. 1987).  Implied employment contracts creating

an employment relationship other than at-will employment are recognized only in limited

situations.  *Id.*  In order to succeed under an implied contract theory,  an employer's statements

must be a manifestation of the employer's willingness to enter into a bargain that would justify the

employee in understanding that his or her assent was invited.  *Continental Airlines*, 731 P.2d at

711.  The employee bears the burden of establishing the existence of an implied contract.

*Continental Airlines*, 731 P.2d at 712.  Here, Plaintiff argues that Defendant promulgated anti-

discrimination and equal employment opportunity policies, upon which Plaintiff relied when he

reported racial discrimination to Sewolt and which Defendant breached by discriminating against

him and retaliating against him for reporting discrimination.  (Compl. ¶¶ 30–32; Pl.'s Resp. at

28–30.)  Specifically, Plaintiff asserts that Defendant's anti-discrimination policy: (1) prohibited

discrimination "in recruitment, selection, appointment, training compensation, promotion or

transfer, discipline, retention or other aspects of personnel administration because of . . . race . . .

or other non-merit factors;" (2) promoted the "full realization of equal opportunity employment

through a continuing affirmative action program and promotion of equal opportunity at all levels;"

(3) instructed employees to bring policy violations to their supervisors, who in turn were required

to notify Defendant's human resource manager and president of the reported incident; and (4)

stated that "[a]ll employees reporting a compliant in any of these areas shall be protected from any

retaliatory measures and all complaints will be thoroughly investigated and resolved."[4] (Pl.'s

Resp., Statement of Additional Disputed Facts ¶ 114; Compl. ¶ 29; Def.'s Reply, Ex. A–30

[Employee Handbook Affirmative Action and Equal Opportunity Policy].)  Plaintiff asserts further

that Defendant's termination and separation policy: (1) required management to "adhere strictly

to its Equal Employment Opportunity Policy . . . when deciding on matters relating to the

discipline and termination of employment;" and (2) stated that "no person shall be discriminated

against in a termination situation due to race."  (Pl.'s Resp., Statement of Additional Disputed

Facts ¶ 115; Compl. ¶ 30; Def.'s Reply, Ex. A–27 [Employee Handbook Termination and

Separation].)

---

[4]In support of his contentions, Plaintiff cites Defendant's employee handbook, attached to Defendant's motion at Exhibit A–5.  (Pl.'s Resp., Statement of Additional Disputed Facts ¶¶ 114–15.)  The pages Plaintiff purports to cite, and thus the language upon which Plaintiff purports to have relied, are not included in Defendant's exhibit.  (Def.'s Br., Ex. A–5 [CARS Employee Handbook].)  Potentially fatally to his claim, Plaintiff failed to furnish admissible evidence beyond his own recollection of Defendant's statements in order to establish the existence of an implied contract.  Interestingly, Defendant satisfies Plaintiff's burden by attaching the provisions in question to its reply.  (Def.'s Reply, Ex. A–27 [Employee Handbook Termination and Separation], Ex. A–30 [Employee Handbook Affirmative Action and Equal Opportunity Policy].)

Plaintiff's claims must fail.  Where an employer has clearly and conspicuously disclaimed intent to enter a contract limiting its right to discharge employees, summary judgment dismissing breach of contract claims based on employee handbook provisions is appropriate.  *Silchia v. MCI Telcoms. Corp.*, 942 F. Supp. 1369, 1374 (D. Colo. 1996) (quoting *Ferrera v. Nielsen*, 799 P.2d 458 [Colo. App. 1990]).  Defendant proffers disclaimers in its employment application, probationary period acknowledgment form, and employee handbook.  (Def.'s Br. Ex. A–2 [Application for Employment], Ex. A–4 [Probationary Period Acknowledgment Form], Ex. A–5 [CARS Employee Handbook], Ex. A–27 [Employee Handbook Termination and Separation].)  Plaintiff does not deny that Defendant disclaimed its intent, but argues that Defendant's disclaimers are not sufficiently clear or conspicuous.  (Pl.'s Resp. at 28, Statement of Additional Disputed Facts ¶ 117.)  Plaintiff's argument is unconvincing.

 When Plaintiff sought employment with Defendant, Plaintiff completed and signed an employment application.  The last section on the last page of the Defendant's employment application is styled "Applicant Statement," and contains the statement that "the employer does not unlawfully discriminate in employment," which ostensibly supports Plaintiff's claim.  (Def.'s Br., Ex. A–2 [Application for Employment].)  The same section of the "Applicant Statement" contains a separately indented paragraph above the signature block that provides:

> If I am hired, I understand that I am free to resign at any time, with or without cause and without prior notice, and the employer reserves the same right to terminate my employment at any time, with or without cause and with or without prior notice, except as may be required by law.  This application does not constitute an agreement or contract for employment for any specified period of definite duration.  I understand that no supervisor or representative of the employer is authorized to make any assurances to the contrary and that no implied, oral or written agreements contrary to the foregoing express language are valid unless they are in writing and signed by the employer's president.

(Def.'s Br., Ex. A–2 [Application for Employment].)  Whether a contract disclaimer in a handbook or employment application is clear and conspicuous is a question of law.  *Durtsche v. Am. Colloid Co.*, 958 F.2d 1007, 1010 (10th Cir. 1992); *Silchia*, 942 F. Supp. at 1374–75. Defendant's disclaimer, written in clear language, is not highlighted by capital letters or bold print, but is presented in a separate, indented paragraph dedicated exclusively to the disclaimer. Further, the signature block in Defendant's employment application, located immediately beneath the section containing the disclaimer language above, "certif[ies] that [the applicant has] read, fully understand[s] and accept[s] all terms of the foregoing Applicant Statement."  *Id.*  Under these circumstances, I conclude as a matter of law that the disclaimer is sufficiently clear and conspicuous to disclaim Defendant's intent to enter into a contract limiting its rights to terminate employees.  *See Silchia*, 942 F. Supp. at 1375 (finding disclaimer in separate indented paragraph above signature block to be clear and conspicuous despite lack of capital letters or bold print).

Upon accepting employment with Defendant, Plaintiff signed a "Probationary Period Acknowledgment Form," controlling the terms of the first sixty days of Plaintiff's employment. (Def.'s Br., Ex. A–4 [Probationary Period Acknowledgment Form].)  The form contains a disclaimer, but the disclaimer is not conspicuous.  More importantly, the form does not contain any language limiting Defendant's abilities to terminate its employees.  Rather, the form states that the probationary employee has "received a copy of the company handbook," and "agree[s] to comply with all of the policies and procedures contained within the handbook" as a condition of employment.  (*Id.*)  Independent of the nature of its disclaimer, the form does not suffice to establish any intention on the part of Defendant to agree to limit its abilities to terminate its

employees.  Thus, the "Probationary Period Acknowledgment Form" cannot support Plaintiff's claim.

Lastly, Plaintiff attempts to support his claim with the aforementioned limitations on terminating employees contained within in Defendant's employee handbook.  (Pl.'s Resp., Statement of Additional Disputed Facts ¶ 115.)  Defendant proffers evidence to establish that it clearly and conspicuously disclaimed any intent to agree to such limitations.  The first paragraph on the second page of Defendant's employee handbook reads as follows:

> **WELCOME []**
> We hope your employment [with Defendant] is a positive and rewarding experience.  The Policy and Procedures Manual has been prepared to highlight the benefits provided by [Defendant].  The information outlined throughout the manual is to be used as a guideline and does not operate to form in any way an express or implied contract or promise between [Defendant] and its employees or to create any contractual or legal obligations.  This manual does not alter the employment-at-will relationship in any way, and is not so intended.

(Def.'s Br., Ex. A–5 [CARS Employee Handbook].)  The disclaimer is clearly worded, and although it is not set forth in bold print or capital letters, the disclaimer is conspicuously located in a separate, indented paragraph — the first on the page.  *See Silchia*, 942 F. Supp. at 1374–75 (finding disclaimer in separate indented paragraph in employment manual to be clear and conspicuous despite lack of capital letters or bold print); *cf. Jones v. Denver Pub. Sch.*, 427 F.3d 1315, 1324 (explaining Colorado court finding that a disclaimer appearing in an appendix to a handbook was not clear and conspicuous).  Under the circumstances, I conclude that the disclaimer is clear and conspicuous.  Further, the same paragraph Plaintiff cites in support of his claims also states:

> [w]hile a termination/separation may take any number for forms, the classifications [Defendant] uses below are for illustrative purposes only and by no means do they change or alter the at-will relationship between [Defendant] and its employees.

(Def.'s Br., Ex. A–27 [Employee Handbook Termination and Separation].) Colorado courts have found disclaimers located "in close proximity" to provisions setting forth termination procedures to be clear and conspicuous. *Jones*, 427 F.3d at 1324; *George v. Ute Water Conservancy Dist.*, 950 P.2d 1195, 1199 (Colo. App. 1997). I conclude that this second disclaimer in the employee handbook is also clear and conspicuous. Finally, Plaintiff signed Defendant's "Probationary Period Acknowledgment Form," acceding that he had received a copy of the handbook and had been given an opportunity to read it. (Def.'s Br., Ex. A–4 [Probationary Period Acknowledgment Form"].) I find that the disclaimers contained within Defendant's handbook were sufficiently clear and conspicuous to disavow any intent to enter into a contract with Plaintiff limiting its rights to discharge its employees. Accordingly, both the employment application disclaimer and the employee handbook disclaimers were effective in preventing the formation of an express or implied employment contract between Plaintiff and Defendant. *Silchia*, 942 F. Supp. at 1375.

Plaintiff asserts that even in the face of a clear and conspicuous disclaimer, existence of an implied contract may be found where a handbook contains mandatory termination procedures. (Pl.'s Resp. at 29–30.) Plaintiff alleges that Defendant's employee handbook contains mandatory requirements that Defendant will not terminate an employee as an act discrimination or  retaliation for protected activity. (*Id.*) In support of his specious contention, Plaintiff relies on several inapposite cases, all of the which involve situations where defendant employers either promulgated specific disciplinary termination procedures or required "just cause" to terminate

employees.[5]  Here, Defendant's handbook does not require just cause for termination and does

not delineate mandatory disciplinary procedures required before termination.  The sections of the

handbook in question merely describe Defendant's policies against discrimination and in favor of

equal employment opportunity in all aspects of employment.  (Def.'s Br., Ex. A–27 [Employee

Handbook Termination and Separation].)  A statement that amounts to a description of policy

does not constitute a promise or commitment by an employer.  *See George*, 950 P.2d at 1199.

Accordingly, Plaintiff cannot defeat Defendant's clear and conspicuous disclaimers to raise a

substantial question of fact as to the existence of an implied contract.

Plaintiff's estoppel claim fails for similar reasons.  In Colorado, if a discharged employee

fails to show the existence of an implied contract, the employee may still enforce a policy

contained in an employment manual if he can demonstrate that: (1) the employer reasonably

should have expected its employee to consider the employee manual as a commitment by the

employer to follow policies contained in the manual, (2) the employee reasonably relied on the

termination procedures to his detriment, and (3) that injustice can be avoided only by enforcement

of the termination procedures.  *Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1466 (10th Cir.

---

[5] *See Fair v. Red Lion Inn*, 920 P.2d 820, 826 (Colo. App. 1995) (employer's statements and procedures regarding medical leave of absence form could form implied contract despite disclaimer in employee handbook); *Evenson v. Colo. Farm Bureau Mut. Ins. Co.*, 879 P.2d 402, 409 (Colo. App. 1993) (considering inconspicuous disclaimer, question of fact existed as to whether handbook's disciplinary procedures required before termination were mandatory); *Allabashi v. Lincoln Nat'l Sales Corp. of Colo.-Wyo.*, 824 P.2d 1, 2–3 (Colo. App. 1991) (notwithstanding handbook disclaimer, defendant gave employees documents containing procedures and policies requiring just cause for termination and providing for specific procedures to be followed in the event of a dismissal); *Cronk v. Intermountain Rural Electric Ass'n*, 765 P.2d 619, 623 (Colo. App. 1988) (employment manual set forth express causes for termination, and listed potential grounds for termination "'as long as such legitimate reasons constitute just cause'").

1994) (citing *Continental Air Lines*, 731 P.2d at 712).  Here, Plaintiff cannot overcome

Defendant's multiple disclaimers to create a genuine issue of fact as to whether Defendant

reasonably should have expected Plaintiff to consider the anti-discrimination and equal

employment opportunity policies to be a commitment changing the nature of at-will employment.

Consequently, Defendant is entitled to summary judgment on Plaintiff's third claim for breach of

contract and promissory estoppel.

**3.    Conclusions**

Based on the foregoing it is therefore ORDERED as follows:

1.    Defendant's motion for partial summary judgment (# 33) is GRANTED.

2.    The court will hold a Final Pretrial Conference commencing at 10:15 o'clock a.m.

on **March 10, 2006**, in Courtroom A1001 of the Alfred A. Arraj United States Courthouse, 901

19th Street, Denver, Colorado.  In preparing for and participating in the conference, the parties

and counsel will (1) follow the Instructions for Preparation and Submission of Final Pretrial

Order, a copy of which can be downloaded from the court's web site, specifically

http://www.cod.uscourts.gov/forms/ewn_fin_pre_ord_ins.pdf and (2) utilize the specific template

located at http://www.cod.uscourts.gov/forms/ewn_fin_pre_ord.wpd  These specific web

addresses should be used to insure that the proper format is observed.

Dated this 23rd day of February, 2006.

BY THE COURT:


s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge